BRIGHT, Circuit Judge,
dissenting.
The court today reverses the district court and orders it to enjoin the State from enforcing Iowa Code Chapter 527, in its entirety, against Bank One — or against any other national bank for that matter. The court does so because it concludes that, following Congress’s 1996 changes to the statutory definition of “branch,” as found in 12 U.S.C. § 36(j), Automated Teller Machines (“ATMs”) are exempt from geographical branching requirements based in state law. While it is true that such requirements no longer pertain to ATMs,[2]1 cannot agree that this exemption controls the disposition of the case before us. Even if a national bank’s ATMs need not comply with state law geographic restrictions, that does not mean other relevant and permissible state law restrictions are preempted thereby. Many of the sections of Iowa law at issue here are simply not geographical restrictions and ought not be analyzed as though they were.
In my view, those statutory restrictions imposed under Chapter 527 which are valid, evenhanded consumer protections are not preempted by federal law. Thus, I believe that the Superintendent is entitled to enforce them against banks, both state and national alike. I therefore respectfully dissent.
Iowa Code, Chapter 527, titled Electronic Transfer of Funds, has a number of subsections. Many of these subsections are simply not geographical branching restrictions. For example, § 527.5(5) indicates that, “[An ATM] terminal shall bear a sign or label no larger than three inches by two inches identifying the name, address, and telephone number of the owner.” Thus, by its terms, this subsection is a straightforward consumer protection measure. The need for such measures should be obvious. As any contemporary user of ATMs is bound to attest, this technology, convenient though it is, is fraught with danger, and anecdotal evidence suggests that errors are not an infrequent occurrence. Among other possible malfunctions, bank notes may be dispensed improperly, deposits may be incorrectly recorded, and terminals may simply “eat” a customer’s ATM card, refusing to return it for reasons unknown. When such problems occur, customers deserve the information necessary to correct them. But if ATMs are unmarked, consumers are seriously hindered in any attempt to rectify even glaring errors. Section 527.5(5) is nothing more than a rational attempt to address this problem and guarantee that aggrieved ATM users have recourse to the machine’s owners.
Protection of the consumer is well within the power of States to render and is not preempted by federal law. In the recent case of Barnett Bank of Marion County, N.A. v. Nelson, 517 U.S. 25, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996), the Supreme Court had reason to consider the contours of preemption in the context of federal banking law. There the Court noted that, “[i]n defining the preemptive scope of statutes and regulations granting a power to national banks ... normally Congress would not want States to forbid, or to impair significantly, the exercise of a power that Congress explicitly granted.” Id. at 33, 116 S.Ct. 1103. The Court went on to add, however, that “[t]o say this is not to deprive States of the power to regulate national banks, where (unlike here) doing *852 so does not prevent or significantly interfere with the national bank’s exercise of its powers.” Id. (parenthetical in original) (emphasis added). Thus, when a State attempts to regulate the activities of a national bank within its jurisdiction, the State’s laws are not preempted if they create no significant interference with the national bank’s exercise of its due powers.
A subsection of Chapter 527, such as § 527.5(5), which does no more than protect innocent Iowans through the imposition of a de minimus labeling requirement creates no significant interference with any legitimate power vested in national banks, explicit or otherwise. Thus, in my view, these subsections are simply not preempted.
Moreover, it is important to note that the statute before us applies with equal force against both state and national banks. Every bank is required to comply and no advantage is gained by state chartered institutions in the process. This latter point is critically important because the questions raised by consumerism might warrant a different analysis if Iowa’s statute were constructed so as to favor state banks, giving them an advantage over their national bank counterparts in the ongoing competition for borrowers, deposits, and fees. After all, the National Bank Act (“NBA”) has been repeatedly interpreted to prevent such competitive imbalances and to insure that national banks are allowed to compete on an even footing with state banks. See First Nat’l Bank of Logan, Utah v. Walker Bank & Trust Co., 385 U.S. 252, 261, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966) (“Congress intended to place national and state banks on a basis of ‘competitive equality’....”); First Nat’l Bank in Plant City, Florida v. Dickinson, 396 U.S. 122, 131, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969) (The NBA “respond[s] to the competitive tensions inherent in a dual banking structure ... [and] reflects the congressional concern that neither system have advantages over the other....”).
Ironically, the court’s conclusion in this case is at odds with this important principle of competitive equality. State chartered banks remain bound by Iowa’s consumer protection laws. To the extent that the court’s decision today means that national banks are given a free pass, national banks thereby achieve a distinct and favored position under the law. Competitive equality this is not.
The laws of Iowa relating to ATM banking, and granting protection to Iowa residents and others using such services, should be enforced. I do not here attempt to delineate whether some other restriction in the Iowa Code are not applicable to national banks. Those issues may be revisited on further litigation in this case. Unfortunately, the majority has given the defendant, Iowa’s Superintendent of Banking, no opportunity to focus on the consumer protection aspects of Iowa law. The majority not only reverses the denial of a preliminary injunction but, sua sponte, remands for the entry of a permanent injunction. Such action was not requested by the plaintiff, Bank One, and is unwarranted, at least until the issues raised by this case are fully litigated. I would uphold the district court’s order retaining the status quo by denying the preliminary injunction and remanding the case to the district court for further proceedings.

. State law geographic restrictions are still incumbent upon national bank entities which meet the statutory definition of a “branch” because these state law restrictions, enforced by the Comptroller, are incorporated by reference in 12 U.S.C. § 36(c).